UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| KNOX COUNTY, TENNESSEE, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | 3:20-CV-00173-DCLC-JEM |
| | ) | |
| vs. | ) | |
| | ) | |
| M.Q., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Report and Recommendation of the United States Magistrate Judge filed on January 27, 2022, recommending that this Court grant in part and deny in part M.Q.'s Motion for Attorneys' Fees, Costs, and Expert Witness Expenses [Doc. 43]. M.Q. filed Objections to the Report and Recommendation [Doc. 45], Knox County responded in opposition [Doc. 48], and M.Q. replied [Doc. 49]. Knox County also filed Objections to the Report and Recommendation [Doc. 46], to which M.Q. responded in opposition [Doc. 47]. The Court will now consider the Report and Recommendation [Doc. 43] and the parties' respective objections.

**I.    BACKGROUND**

On May 22, 2019, M.Q. filed a due process hearing request with the Tennessee Department of Education as a result of Knox County's proposed placement of M.Q. for the kindergarten school year [Doc. 18, pgs. 3–6]. M.Q. alleged Knox County's proposed placement violated his right to be educated in the "least restrictive environment" ("LRE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1412(a)(5), and discriminated against him in violation of Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act ("ADA" or "Title II"), 42 U.S.C. § 12132 [*Id*. at pg. 106].

1

Administrative Law Judge ("ALJ") Phillip R. Hilliard conducted an administrative hearing and issued a Final Order finding in favor of M.Q. [Doc. 18-4, pgs. 131–58]. The ALJ concluded that Knox County's proposed placement of M.Q. in a Comprehensive Development Class ("CDC-A") was not his LRE and, thus, violated the IDEA [*Id*. at pg. 157]. The ALJ further found M.Q.'s Section 504 and Title II claims to be "pretermitted" [*Id*.]. Knox County subsequently initiated this action seeking review of the ALJ's Final Order [Doc. 1]. M.Q. filed an Answer and Counterclaim for an award of attorney's fees and expenses pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(B), Section 504, 29 U.S.C. § 794a, and Title II of the ADA, 42 U.S.C. § 12205 [Doc. 8].[1]

Thereafter, Knox County filed a Motion for Judgment on the Pleadings [Doc. 20] to which M.Q. responded in opposition and filed a Counter Motion for Judgment [Doc. 21]. On April 27, 2021, this Court denied Knox County's motion and granted M.Q.'s counter motion as to the IDEA claim, holding that Knox County failed to place M.Q. in his LRE as required under the IDEA [Doc. 29]. The Court did not reach the issue of fees or expert expenses in its Memorandum Opinion and Order on the parties' motions [*Id*.]. Thereafter, M.Q. filed a Motion for Attorneys' Fees, Costs, and Expert Witness Expenses [Doc. 31].

This Court referred the motion to the Magistrate Judge [Doc. 39], who issued a detailed report recommending that M.Q.'s attorneys be awarded a total of $144,637.50 in fees plus costs but recommending denial of M.Q.'s request for expert expenses in the amount of $12,300.50 [Doc. 43]. Knox County objects to the recommended attorneys' fee award on various grounds [Doc. 46] and M.Q. objects to the recommended denial of expert expenses [Doc. 45].

---

[1] Prior to the filing of Knox County's Complaint Petition for Judicial Review, M.Q. also initiated an action against Knox County seeking attorneys' fees and expenses on March 25, 2020. *See Michael Q., et al. v. Knox County*, 3:20-CV-125. Upon request of the parties, the Court consolidated the two cases and designated this case, *Knox County v. M.Q., et al.*, No. 3:20-CV-173, as the lead case.

## II. STANDARD OF REVIEW

A district court must conduct a *de novo* review of those portions of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). However, "[a]n 'objection' that does nothing more than disagree with a magistrate judge's conclusion, or simply summarizes what has been argued before, is not considered a valid objection." *Peery v. Hartford Life & Accident Ins. Co.*, No. 2:08-CV-164, 2011 WL 13311856, at *1 (E.D. Tenn. Mar. 28, 2011) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991)). Upon review of any valid objections, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. DISCUSSION

### A. Knox County's Objections

As the Magistrate Judge found, the parties do not dispute M.Q.'s entitlement to attorneys' fees and reasonable costs as the prevailing party under the IDEA [Doc. 43, pg. 2]. Rather, Knox County objects to the recommended hourly rate for one of M.Q.'s attorneys, Justin Gilbert; the recommendation that the fees should not be reduced due to duplicative work completed by both of M.Q.'s attorneys; and the inclusion of billable hours for secretarial tasks [Doc. 46]. The Court will examine each of the foregoing objections in turn.

#### 1. Hourly Rate

The Magistrate Judge recommends that Mr. Gilbert be awarded fees at an hourly rate of $425, rejecting Knox County's proposed rate of $275 as too low and finding Mr. Gilbert's requested rate of $450 to be excessive in light of the rate this Court previously awarded Mr. Gilbert in a separate action [Doc. 43, pg. 7]. Knox County objects and contends an hourly rate of $425 is unreasonable [Doc. 46, pgs. 2–4].

3

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). Generally, "[a] reasonable fee is 'one that is adequate to attract competent counsel, but…[does] not produce windfalls to attorneys.'" *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984)) (citation and quotation marks omitted). "[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n.11. The Court may also rely on "awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests." *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 499 (6th Cir. 2011).

Here, Knox County contends an hourly rate of $425 exceeds the prevailing rate in the area and that it should, at most, fall at or under the $400 this Court previously awarded Mr. Gilbert in a prior IDEA action [Doc. 46, pgs. 2–4]. Knox County asserts the typical hourly rate in the Eastern District of Tennessee is $350 [*Id*. at pg. 4]. In support, Knox County cites various cases in which this Court awarded attorneys' fees at hourly rates between $325 and $375.² Despite the rates

---

² *Campbell v. Graham*, No. 3:06-CV-444, 2010 WL 4628533, at *2 (E.D. Tenn. Aug. 18, 2010), *report and recommendation adopted*, 2010 WL 4628650 (E.D. Tenn. Nov. 4, 2010) (awarding fees at the requested rate of $325 while noting that this was "on the high end of fees charged in the Eastern District of Tennessee" for § 1983 actions); *Gunter v. Bemis Co., Inc.*, No. 4:16-CV-37, 2019 WL 3526337, at *7 (E.D. Tenn. July 25, 2019) (awarding fees at the requested rate of $375 in an ADA action); *Vanderhoef v. Dixon*, No. 3:16-CV-508, 2020 WL 4673464, at *3 (E.D. Tenn. Aug. 12, 2020) (awarding fees at a rate of $350, holding that "[t]his rate is commensurate with rates awarded by this Court to other experienced civil rights attorneys."); *Doe v. Gwyn*, No. 3:17-CV-504, 2020 WL 7647782, at *2 (E.D. Tenn. Nov. 6, 2020), *report and recommendation adopted*, 2020 WL 7647029 (E.D. Tenn. Dec. 23, 2020) (awarding fees at the requested rate of $300 based on the finding that the rate "is reasonable for an attorney with over 37 years of experience in handling complex litigation.").

4

awarded in those cases, this Court found in a more analogous case that Mr. Gilbert's regular billing rate of $400 was reasonable for his representation of parents in an IDEA action. *L.H. v. Hamilton Cty. Dep't of Educ.*, 356 F. Supp. 3d 713, 723 (E.D. Tenn. 2019). Knox County argues there are certain factors favoring the high hourly rate in *L.H.* that are not present here [Doc. 46, pg. 3]. Specifically, Knox County asserts the litigation in *L.H.* was ongoing for a period of five years, involved issues of first impression, and is considered a "landmark" case for Tennessee [*Id.*]. Thus, Knox County asserts it would be unreasonable to award a higher fee in this matter, which is more streamlined and relied extensively on research and work already performed in *L.H.* [*Id.*].

The length of the litigation is significant in IDEA actions due to the contingent nature of attorneys' fees. Mr. Gilbert's representation of M.Q. began in June 2019, almost three years ago, without any payment of advanced fees. Rather, he took on this case exclusively in reliance on prevailing and obtaining an award of fees through the IDEA's fee-shifting provision [Doc. 31, pg. 9]. Although litigation in *L.H.* was ongoing for five years, the plaintiffs in that case paid $60,000 at the outset to cover the beginning of attorney's fees. *L.H.*, 356 F. Supp. 3d at 722. The two-year difference between the length of litigation in this matter and in *L.H.* is minimal when considered in conjunction with the level of pecuniary risk. *See Hamlin v. Charter Twp. of Flint*, 165 F.3d 426, 438 (6th Cir. 1999) ("[T]he reasonable hourly rate may be adjusted upward to account for the risk of non-payment inherent in a contingency fee arrangement.").

Additionally, the fact that *L.H.* involved novel issues, which this case relied heavily on, is sufficiently reflected in the time the attorneys spent working on each case. In *L.H.*, the Court awarded Mr. Gilbert fees for a total of 859.96 hours. *L.H.*, 356 F. Supp. 3d at 728. Here, the Magistrate Judge recommends an award of fees for 159.25 hours [Doc. 43, pg. 17]. Based on the

foregoing, the differences asserted by Knox County between *L.H.* and this matter do not render an award at an hourly rate above $400 *per se* unreasonable.

In *L.H.*, this Court highlighted Mr. Gilbert's experience in special education litigation, which dates back to 1996 when he appeared at his first due process hearing for a child with a disability, the contingent nature of fees, and the risk of representing parents in IDEA matters. *Id*. at 720–23. Moreover, Dean Hill Rivkin, from the University of Tennessee College of Law,[3] states in his declaration that there are very few attorneys in Tennessee who litigate IDEA cases on behalf of disabled students and such cases are "often extraordinarily complex, both legally and factually, protracted, and emotionally taxing." [Doc. 31-3, ¶ 9]. Rivkin also refers to Mr. Gilbert as the "leading lawyer in the special education field in Tennessee." [*Id*. at ¶ 10].

Considering Mr. Gilbert's experience in the highly specialized area of special education law, his reputation as the "leading lawyer" in the field, the risk he and his co-counsel took by litigating this matter on a purely contingent basis, and this Court's award two years ago at a rate of $400, the Court finds that $425, an approximate 6% increase of the prior rate, is reasonable. An hourly rate of $425 for such complex, taxing, and risky litigation is adequate to encourage other competent attorneys in the area to take on special education cases, while also avoiding a windfall to attorneys.[4] Thus, the recommended rate is in line with those prevailing in the community for similar services by lawyers of comparable skill, experience, reputation, and Knox County's objection to such recommendation is **OVERRULED**.

---

[3] Rivkin is the Williford Gragg Distinguished Professor in Law Emeritus at the College of Law, where he has been a faculty member since 1976. He has engaged in a number of complex federal cases and has been lead counsel in several cases under the IDEA [Doc. 31-3. ¶¶ 1–3].

[4] This Court recently found $425 to be a reasonable rate for Mr. Gilbert in a similar case under the IDEA. *D.S. v. Knox County, Tennessee*, No. 3:20-CV-240, 2022 WL 885851 (E.D. Tenn. March 25, 2022).

### 2. Duplicative Fees

Next, Knox County argues certain billing entries by Mr. Gilbert and Jessica Salonus reflect duplicative work [Doc. 46, pg. 4]. The Magistrate Judge reviewed the alleged duplicative entries and, finding no improper duplication, declined to recommend a reduction [Doc. 43, pg. 10]. Knox County objects to this recommendation, but in doing so, merely restates verbatim the arguments which the Magistrate Judge addressed in full. Such objections are not proper and are deemed waived. *Modrall v. U.S. Dep't of Educ.*, No. 1:19-CV-250, 2020 WL 2732399, at *2 (E.D. Tenn. May 26, 2020) (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)) (the Court may deem waived objections that "merely restate the arguments asserted in [the party's] earlier motion, which were addressed by the magistrate judge's report and recommendation.").

Nonetheless, the Court has reviewed the Magistrate Judge's findings as to the alleged duplications and likewise finds that the billing entries at issue indicate Mr. Gilbert and Ms. Salonus were "not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Baker v. Nat'l Seating Co.*, No. 3:05-CV-187, 2006 WL 8442688, at *2 (E.D. Tenn. Mar. 28, 2006) (quoting *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1302 (11th Cir. 1988)). The hours billed by both attorneys for hearing preparation, their respective roles during the due process hearing, and collaboration in drafting the Proposed Findings of Fact and Conclusions of Law for the ALJ and the Response to Knox County's Motion for Judgment on the Pleadings are not "excessive, redundant, or otherwise unnecessary" and are, therefore, reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *see Williamson Cty. Bd. of Educ. v. C.K.*, No. 3:07-CV-826, 2009 WL 2066251, at *4 (M.D. Tenn. July 9, 2009) ("Work divided between two experienced attorneys is not automatically duplicative…and deductions will be made only where the billing is not reasonable.").

Accordingly, for the reasons stated herein and as further detailed by the Magistrate Judge, the Court finds no inappropriate duplication and declines to reduce the hours billed by M.Q.'s attorneys on that ground. Therefore, Knox County's objection as to the issue is **OVERRULED**.

### 3. Secretarial Tasks

Finally, Knox County objects to the inclusion of billable hours for tasks it characterizes as secretarial [Doc. 46, pg. 7]. The Magistrate Judge reviewed the billing entries cited by Knox County and found that the work was compensable [Doc. 43, pg. 13]. Knox County specifically takes issue with certain hours billed by Ms. Salonus for tasks such as compiling records, labeling videos, redacting records, correspondence with witness regarding scheduling, bate stamping records, preparing exhibits, and preparing pleadings for filing, and argues that such tasks do not "require legal training or discretion." [Doc. 46, pg. 8] (quoting *B.H. by & through L.H. v. Obion Cty. Bd. of Educ.*, No. 1:18-CV-1086, 2021 WL 5531671, at *3 (W.D. Tenn. Nov. 24, 2021)).

"[F]ee requests for tasks that are purely clerical or secretarial in nature are not compensable." *B.H.*, 2021 WL 5531671, at *3; *see Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Although "[w]ork traditionally performed by attorneys" is compensable, clerical tasks "are part of the overhead cost necessary to operate any law firm[.]" *Richards v. Johnson & Johnson*, No. 2:08-CV-279, 2010 WL 3219138, at *7 (E.D. Tenn. May 12, 2010), *report and recommendation adopted*, 2010 WL 3219133 (E.D. Tenn. Aug. 12, 2010). Thus, the Court must "distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers[.]" *Jenkins*, 491 U.S. at 288 n.10. Clerical work involves tasks such as "proofing, printing, and mailing," whereas compensable legal work requires legal skill or expertise. *Allison v. City of Lansing*, No. 5:03-CV-156, 2007 WL 2114726, at *2 (W.D. Mich. 2007).

Knox County argues that 22.25 hours should be redacted from Ms. Salonus's billable hours due to the inclusion of clerical work at litigation rates [Doc. 46, pg. 9]. Upon review of the billing entries Knox County seeks to exclude, the vast majority of the tasks include legal functions that are appropriately conducted by an attorney. For instance, legal knowledge as to procedure and IDEA standards is necessarily required to sift through educational records and determine what is relevant,[5] to communicate with expert witnesses about the substance of the matter,[6] to draft a memo, brief, or pleading,[7] or to prepare for depositions or hearings.[8] Knox County acknowledges that most of the "secretarial tasks…are grouped with other more legal activities…and it is hard to parse out what amount of time was spent purely on those disallowed activities." [Doc. 46, pg. 8]. However, the aforementioned tasks are compensable as they are not purely clerical or secretarial.

The Court is not required to act as a "green-eyeshade accountant" in assessing fees so as to "achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Nonetheless, the Court finds that two billing entries highlighted by Knox County are properly characterized as secretarial

---

[5] "6/25/2019 Compile relevant educational records for Michael Q. and provide to [expert] for background information" [Doc. 31-2, pg. 10]. "11/20/2019 Receipt, review, and compile supplement to parents' deposition re: remind app messaging" [*Id*. at pg. 14].

[6] "6/26/2019 Correspondence with [expert] re: KCS' recommendations and lack of behavioral supports…Correspondence to [expert] enclosing full records and focused records; and discussing scope of opinion being requested" [*Id*. at pg. 11].

[7] "7/22/2019 Review educational records and prepare memo to file regarding chronological contents and coordinating bates numbering of records" [*Id*.]. "3/25/2020 Review and revise Complaint for Fees and prepare for filing" [*Id*. at pg. 17]. "10/8/2020 Continued revisions of response to motion for judgment on the pleadings and insertion of citations to the technical record." [*Id*.]. "5/27/2021 Continued work and finalization of Fee Petition and Declarations including exhibits (redacting) [*Id*. at pg. 18].

[8] "10/25/2019 Prepare materials for deposition of [expert]" [*Id*. at pg. 13]. "12/13/2019 Identify, prepare, and organize all potential exhibits, memos, transcripts, etc. needed for hearing" [*Id*. at pg. 15].

or clerical tasks—the .25-hour entry on 8/19/2019 for emails with an expert regarding "deposition video capabilities" and the 1.25-hour entry on 10/23/2019 for exchanging information with an expert regarding depositions and logistics and making arrangements [Doc. 31-2, pgs. 12–13]. Setting up video depositions, communicating with experts about logistics, and arranging for experts to attend depositions are tasks which can often be accomplished by non-lawyers and "are part of the overhead cost necessary to operate any law firm[.]" *Richards*, 2010 WL 3219138, at *7. Thus, Knox County's objection is **SUSTAINED** only as to the reduction of 1.5 hours of the billing entries. As to the remaining 20.75 hours, Knox County's objection is **OVERRULED**.

B.     **M.Q.'s Objection**

M.Q. filed a limited objection to the Magistrate Judge's recommendation for denial of M.Q.'s request for reimbursement of expert witness [Doc. 45]. M.Q. paid two expert witnesses for their testimony for the due process proceeding. But, as the parties acknowledge, the IDEA does not provide for recovery of expert fees. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006) (Section 1415(i)(3)(B) of the IDEA "does not even hint that acceptance of IDEA funds makes a State responsible for reimbursing prevailing parents for services rendered by experts.").

As a result, M.Q. seeks to recover expert fees under Section 504 and Title II of the ADA. The ALJ found M.Q.'s Section 504 and Title II claims to be "pretermitted" by the recovery under the IDEA [Doc. 18-4, pgs. 131–58]. This Court has since rejected such reasoning. *D.S. v. Knox Cty., Tennessee*, No. 3:20-CV-240, 2021 WL 6496726, at *15–16 (E.D. Tenn. June 21, 2021) (holding that "[t]he ALJ erred in finding that…a Section 504 claim and an IDEA claim are identical" and concluding that "[w]here the parties request expert fees, which are not provided under the IDEA, the claims cease to be redundant and must be analyzed separately.").

10

Case 3:20-cv-00125-DCLC-JEM Document 45 Filed 03/29/22 Page 10 of 14 PageID #: 1475

M.Q. seeks judgment for a least restrictive environment violation under Section 504[9] and unnecessary exclusion under Title II.[10] [Doc. 45, pg. 2]. M.Q. asserts that "under the Court's reasoning on the LRE claims for IDEA, the result is the same for 504 and/or the ADA." [Doc. 31, pg. 14]. However, as this Court found in *D.S.*, Section 504 and Title II claims must be analyzed separately from IDEA claims. *D.S.*, 2021 WL 6496726, at *16.

It is well-established that public schools are covered by Section 504 and Title II. *I.L. through Taylor v. Knox Cty. Bd. of Educ.*, 257 F. Supp. 3d 946, 955 (E.D. Tenn. 2017). Moreover, Section 504 and Title II claims may be analyzed together "[b]ecause the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act[.]" *Thompson v. Williamson Cty., Tennessee*, 219 F.3d 555, 557 n.3 (6th Cir. 2000). A plaintiff seeking relief under Section 504 or Title II against a public school "must show that he or she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). Here, the first two elements are presumably satisfied. Therefore, the question is whether Knox County's failure to place M.Q. in his LRE amounts to discrimination.

---

[9] The regulations implementing Section 504 provide, in relevant part:

> A recipient shall place a handicapped person in the regular educational environment operated by the recipient unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily.

34 C.F.R. § 104.34(a)

[10] Title II of the ADA provides "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132.

The Eighth Circuit answered this question in the negative in *Monahan v. State of Nebraska*, 687 F.2d 1164 (8th Cir. 1982) when examining the IDEA under its prior name—the Education for All Handicapped Children Act of 1975 ("EAHCA"). The Sixth Circuit has since cited *Monahan* with approval in reference to the IDEA. *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 167 (6th Cir. 2003). In *Monahan*, the court explained the difference between the EAHCA and Section 504. The EACHA (now the IDEA) "imposes an affirmative duty on recipients of federal funds to provide a free, appropriate education for handicapped children[,]" whereas Section 504 is not "an affirmative-action statute." *Monahan*, 687 F.2d at 1170. Rather, "Section 504…is simply a prohibition of certain conduct on the part of recipients of federal financial assistance." *Id*.; *see Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 411 (1979) ("[N]either the language, purpose, nor history of [Section] 504 reveals an intent to impose an affirmative-action obligation on all recipients of federal funds.").

Thus, "in order to show a violation of the Rehabilitation Act, something more than a mere failure to provide the 'free appropriate education' required by [the IDEA] must be shown." *Id.*, *cited with approval in N.L. ex rel. Mrs. C. v. Knox Cty. Sch.*, 315 F.3d 688, 695 (6th Cir. 2003). The policy behind this rationale is that "[t]he reference in [Section 504] to 'discrimination' must require…something more than an incorrect evaluation, or a substantively faulty individualized education plan, in order for liability to exist." *Id*. The court went on to explain:

> Experts often disagree on what the special needs of a handicapped child are, and the educational placement of such children is often necessarily an arguable matter. That a court may, after hearing evidence and argument, come to the conclusion that an incorrect evaluation has been made, and that a different placement must be required under EAHCA, is not necessarily the same thing as a holding that a handicapped child has been discriminated against solely by reason of his or her handicap. An evaluation, in other words, is not discriminatory merely because a court would have evaluated the child differently.

*Id*.

Based on the foregoing, the court concluded "either bad faith or gross misjudgment should be shown before a [Section] 504 violation can be made out, at least in the context of education of handicapped children." *Id*. at 1171. "So long as the state officials involved…exercised professional judgment, in such a way as not to depart grossly from accepted standards among educational professionals," there is no liability under Section 504. *Id*. (referring to such departure as "educational malpractice"). The Sixth Circuit adopted this standard in *Campbell*, finding no Section 504 discrimination when the parents of a child with a disability failed to offer evidence showing that the school's "pertinent decision-makers had failed to exercise a reasonable degree of professional judgment" by assigning their child to the standard remedial reading program rather than a private tutorial course. *Campbell*, 58 F. App'x at 168.

Accordingly, in the absence of "educational malpractice," that is, a showing of bad faith or gross misjudgment, Knox County's failure to follow the affirmative requirements of the IDEA to provide M.Q. with an education in his LRE does not constitute discrimination under Section 504 or Title II. M.Q. argues that Knox County was deliberate with its segregation of M.Q. and intentionally ignored overwhelming evidence of M.Q. succeeding in the regular education classroom [Doc. 45, pg. 7]. However, under Section 504 and Title II, M.Q. "was entitled *only* to a 'reasonable' public accommodation of his disability, *not* to the 'best possible' accommodation." *Id*. at 167 (quoting *Dong v. Bd. of Educ.*, 197 F.3d 793, 800 (6th Cir.1999)) (emphasis in original).

The determinative question for purposes of Section 504 and Title II discrimination is whether Knox County exercised "a reasonable degree of professional judgment" in deciding that the CDC-A classroom would adequately accommodate M.Q.'s disability, not whether placement in the regular education classroom would provide a better accommodation. *Id*. at 168.; *see also N.L. ex rel. Mrs. C.*, 315 F.3d at 695 ("[S]ection 504 does not require affirmative efforts to

13

overcome the disabilities caused by handicaps, but instead 'simply prevents discrimination on the basis of handicap.'"). Because M.Q. has failed to produce evidence that the CDC-A classroom was not a reasonable accommodation, Knox County is not liable under Section 504 or Title II. Therefore, to the extent Section 504 or Title II provide for reimbursement of expert expenses, M.Q. is not entitled to such and his objection is **OVERRULED**.

## IV. CONCLUSION

For the reasons stated herein, Knox County's Objections [Doc. 46] are **OVERRULED IN PART** and **SUSTAINED IN PART**, M.Q.'s Objection [Doc. 45] is **OVERRULED**, and the Report and Recommendation [Doc. 43] is **ACCEPTED AND ADOPTED IN PART** and **MODIFIED IN PART**. M.Q.'s Motion for Attorneys' Fees, Costs, and Expert Witness Expenses [Doc. 31] is **GRANTED IN PART** and **DENIED IN PART**.

Attorney Justin Gilbert is awarded **$73,950.00** in attorney's fees, plus costs. Attorney Jessica Salonus is awarded **$70,252.50** in attorney's fees, plus costs. M.Q.'s motion is **DENIED** to the extent it seeks reimbursement of expert fees under Section 504 of the Rehabilitation Act and Title II of the ADA. A separate judgment shall enter.

SO ORDERED:

s/ Clifton L. Corker<br>
United States District Judge